IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISSA SMITH,<br>    *Plaintiff*,<br><br>vs.<br><br>ACCENTURE LLP and<br>ACCENTURE PLC,<br>    *Defendants*. | § § § § § § § § | Civil Action No. 4:21-cv-03487<br><br>JURY TRIAL DEMANDED |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Melissa Smith now files this Complaint against Defendants Accenture LLP and Accenture plc. In support, Plaintiff states as follows:

### **PARTIES**

1. Plaintiff Melissa Smith is a citizen of the United States and a resident of Kingwood, Texas.

2. Defendant Accenture LLP is a limited liability partnership authorized to transact business in the state of Texas. It may be served with process through its registered agent for service of process, Corporate Creations Network, Inc., 5444 Westheimer #1000, Houston, Texas 77056 or as may otherwise be permitted under Rule 4 of the Federal Rules of Civil Procedure and/or the Texas long-arm statute.

3. Defendant Accenture plc is the parent company of Accenture LLP and a public limited company organized under the laws of the Republic of Ireland. It may be served with process through one of its officers, such as Ellyn Shook, located at 161 N. Clark St., Chicago, Illinois 60601 or as may otherwise be permitted under Rule 4 of the Federal Rules of Civil Procedure and/or the Hague Convention.

4.      Accenture plc and Accenture LLP are joint employers due to the nature of control, ownership, and employee management Accenture plc exercises over Accenture LLP.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims described in this Complaint pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

6.      This Court has personal jurisdiction over the Defendants because they have continuously and systematically performed a substantial amount of business within the state of Texas and, moreover, are being sued herein for illegal conduct against Plaintiff that occurred within the state of Texas.  Accordingly, this Court has both general and specific jurisdiction over Defendant.

7.      The Court has subject matter jurisdiction over Plaintiff's claims under the Texas Commission on Human Rights Act pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the United States District Court for the Southern District of Texas pursuant to 42 U.S.C. § 2000e-5(f)(3) because all or part of the unlawful employment practices committed by Defendant occurred in this district.

## FACTS

9.      Smith worked at Accenture as a Management Consulting Senior Manager in the CFO & Enterprise Value sector.

10.     Smith is in her sixties (*i.e.*, Plaintiff is over the age of forty).

11.     Smith is a white female.

12.     Accenture is a global professional services company that helps clients build their digital core, transform their operations, and accelerate revenue growth—creating tangible value across their enterprises at speed and scale.

13. Accenture has more than 500 employees.

14. Smith began working at Accenture on September 5, 2015.

15. Smith's primary job duties as a Senior Manager involved management consulting; providing strategic insight regarding financial optimization and process standardization for Accenture's clients.

16. Smith had the necessary skills and experience for her position as a Senior Manager.

17. Prior to Smith's termination from Accenture, Smith had no disciplinary history and no write-ups.  In fact, Smith was often praised for her work and received frequent bonuses.

18. The last project assigned to Smith during her employment at Accenture was supervised by a higher-level Managing Director named Brijesh Srivastava.

19. Brijesh Srivastava is a South-Asian, Indian male and approximately thirteen years younger than Plaintiff.

20. Brijesh Srivastava pervasively talked down to, belittled, and intimated Smith in front of other employees and during meetings, pushing Smith to tears and shortness of breath. However, Brijesh Srivastava did not talk down to, belittle, or try to intimidate male employees that were similarly-situated to Smith.

21. Due to the severity of Srivasta's poor treatment of Smith, Smith complained of his discriminatory treatment to another manager, Deb Marthaler, who promised to have a discussion with Brijesh about how he treated women.

22. Brijesh Srivastava has a history of talking down to and treating non-Asian employees (particularly female non-Asian employees) less favorably than Asian employees, and Smith is not the only female employee at Accenture that has complained of Brijesh Srivastava's treatment of women.

23. After being called down by Marthaler for his poor treatment of Smith, Brijesh Srivastava contacted Managing Director/Senior Partner Aneel Delawalla (another Indian/South-Asian male who also had a history of treating non-Asian employees—particularly non-Asian, female employees—less favorably than Asian employees) and conspired to get rid of Smith, an older white woman in a position of authority.

24. On October 1, 2020, around 4:30 p.m. in the afternoon, Smith's career counselor, Eric Noren, called Smith told her that she was going to be terminated with her last day being October 16, 2020. This shocked Smith because Smith was already booked to start on another project around October 5, 2020.

25. Blindsided by the news that she was being terminated, Smith asked Eric Noren in the October 1 phone call why she was being fired, but Noren was evasive and did not provide Smith with a reason for her termination. However, Noren did tell Smith about the discussion between Srivastava and Delawalla and indicated that she was going to be offered a severance package under the Accenture United States Separation Benefits Plan. Smith also sent repeated emails to Human Resources asking for a specific reason as to why she was being terminated, but she never received a response as to a specific reason for her termination.

26. The Accenture United States Separation Benefits Plan is an ERISA-protected employee benefits plan that provides separation benefits to eligible participants.

27. The Summary Plan Description and Plan Documents of the Accenture United States Separation Benefits Plan state, "You will become a Participant if (i) you are on Accenture's regular payroll in the United States, and (ii) your employment with Accenture is involuntarily terminated for reasons other than for Cause (as determined by Accenture in its sole discretion), and (iii) you submit (and do not later revoke) a signed Separation Agreement to Accenture by the stated

deadline (as further described below)."

28. At the time that Accenture decided to terminate Smith, if Accenture in its sole discretion had determined that the reason for Smith's was for "Cause", then Smith would not have been an eligible participant under the ERISA-protected plan.

29. In the Glossary of Terms in the Accenture United States Separation Benefits Plan, the Plan version applicable to Smith states:

> "Cause" means "cause" as defined in any employment agreement then in effect between an employee and Accenture or an Affiliate, or if not defined therein, or if there is no such agreement, "Cause" means the employee's (i) embezzlement, misappropriation of corporate funds, or other acts of dishonesty; (ii) commission or conviction of any felony, or of any misdemeanor involving moral turpitude, or entry of a plea of guilty or nolo contendere to any felony or misdemeanor; (iii) engagement in any activity that the employee knows or should know could harm the business or reputation of Accenture or an Affiliate; (iv) failure to comply or adhere to Accenture's or an Affiliate's policies; (v) **continued failure to meet performance standards as determined by Accenture or an Affiliate** [emphasis added]; or (vi) violation of any statutory, contractual, or common law duty or obligation to Accenture or an Affiliate, including, without limitation, the duty of loyalty and obligations under any employment agreement or its incorporated exhibits. The determination of the existence of Cause shall be made by Accenture in good faith, and such determination shall be conclusive for purposes of the Plan.

30. In October of 2020, Accenture offered Smith severance benefits under the Accenture United States Separation Benefits Plan.

31. Since Smith was offered severance benefits under the Accenture United States Separation Benefits Plan, Accenture did not determine in its sole discretion that Smith's employment was being terminated for "Cause," as defined in the Accenture United States Separation Benefits Plan.

32. In addition to being offered severance under the Accenture United States Separation Benefits Plan and receiving a draft separation agreement labeled "**Age 40 and over group**", Smith received disclosures pursuant to the Older Workers Benefit Protection Act showing the age and job titles of managers that were being terminated. Upon reviewing these disclosures, Smith

noticed that a disproportionate amount of older management consulting senior managers were being terminated by Accenture. According to the information provided by Accenture, almost 80% of the management consulting senior managers were over the age of 40, with Smith being the oldest management consulting senior manager to be terminated.

33. On October 15, 2020, Plaintiff sent an email to a Human Resources Lead named Michael Mendoza—who was in communication with Smith about Accenture's severance package offer—stating that she believed she was being discriminated against because of her age and her gender. To Smith's knowledge, no investigation was ever conducted.

34. After Smith's employment ended at Accenture, Plaintiff filed for unemployment benefits at the Texas Workforce Commission.

35. Despite Accenture offering Smith a severance package and not giving her a specific reason for her termination, *prior to* Smith's October 15, 2020 email complaining of what she reasonably believed to be unlawful discrimination, Accenture disputed Smith's claim in order to deny her unemployment benefits.

36. After Smith's termination from Accenture, Smith was replaced by a non-white employee named Dee Hlawek, who is significantly younger than Smith.

37. Before Smith's termination, she attempted multiple times to work on other projects that Consulting Managers and Directors wanted her to be on. However, Accenture blocked Smith's attempts to stay employed at Accenture by joining other available projects with managers that wanted to work with her.

38. Upon information and belief, Accenture has a pattern or practice of giving preferential treatment to young, non-white individuals (mostly Asian and South-Asians) in its employment practices like hiring, firing, and promotion opportunities.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

39. On December 14, 2020, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC").

40. The EEOC issued Plaintiff a right to sue letter on or about August 03, 2021.

41. This lawsuit has been filed within 90 days of the EEOC's issuance of that Notice. Consequently, this lawsuit has been filed within 90 days of Plaintiff's receipt of that Notice.

42. The TWC has never issued Plaintiff a right to sue letter, but her charge has been on file for more than 180 days as of the date of this lawsuit's filing.

43. Based on the foregoing, Plaintiff has exhausted all administrative remedies required by Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and/or the Texas Commission on Human Rights Act.

**FIRST CAUSE OF ACTION (AGE DISCRIMINATION)**
*ADEA & TCHRA*

44. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

45. Plaintiff is a member of a protected class under the ADEA and the Texas Commission on Human Rights Act because she is over the age of 40 and was so at the time she was employed at Defendants.

46. Plaintiff suffered an adverse employment action when she was terminated from Defendants.

47. Plaintiff was replaced by someone significantly younger than her.

48. Defendants failed to hire Plaintiff when she was blocked from moving to another project within the company. Pleading in the alternative, Defendants failed to promote Plaintiff by blocking her from joining another project within the company.

7

49. But for her age, Plaintiff would not have been terminated from Defendants. Accordingly, the Defendants violated the ADEA.

50. But for Plaintiff's age, Defendants would not have disallowed her from joining another project within the company and/or failed to promote her. Accordingly, the Defendants violated the ADEA.

51. At the very least, age was a motivating factor in the decision to terminate Plaintiff and/or block her from joining another project within the company, which would have resulted in a promotion. Thus, the Defendants violated the TCHRA for discriminating against Plaintiff because of her age.

52. At the very least, age was a motivating factor in the decision to block Plaintiff from joining another project within the company, which would have resulted in a promotion. Thus, the Defendant violated the TCHRA for discriminating against Plaintiff because of her age.

53. Plaintiff has been damaged by the discrimination against her.

54. Defendant discriminated against Plaintiff willfully. An award of liquidated damages under the ADEA is therefore warranted.

55. Defendant discriminated against Plaintiff with malice and/or reckless disregard for Plaintiff's statutory right to be free from discrimination. An award of exemplary damages is therefore warranted pursuant to the TCHRA.

### SECOND CAUSE OF ACTION (GENDER DISCRIMINATION)
*TITLE VII & TCHRA*

56. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

57. Plaintiff is a member of a protected class under Title VII because she is female.

58. As stated above, Plaintiff suffered an adverse employment action when she was terminated from Defendants.

59. Plaintiff's supervisor on her last project, Srivastava, has a history of talking down to and intimidating female employees, and Srivastava had discriminatory animus towards Plaintiff as a "white woman in charge".

60. Despite the fact that Srivastava is known for his poor treatment and intimidation of women, Srivastava did not approve of Plaintiff's "management and communication style," which is vague, subjective, and a clear implication that Srivastava has certain expectations of gender norms and double standards of how women carry themselves in the workplace (*e.g.* the stereotype women cannot be assertive because "that's a man's job.").

61. Pleading in the alternative, but for her gender, Plaintiff would not have been terminated from Defendants. Accordingly, the Defendants violated Title VII.

62. Pleading in the alternative, Plaintiff is a victim of sex-plus-age discrimination.

63. Plaintiff has been damaged by the discrimination against her.

64. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights. An award of exemplary damages is therefore warranted.

**THIRD CAUSE OF ACTION (RACE DISCRIMINATION)**
*TITLE VII & 42 U.S.C. § 1981*

65. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

66. Plaintiff is considered a member of a protected class under Title VII and 42 U.S.C. § 1981 because both Title VII and § 1981 prohibit discrimination based on race.

67. As mentioned above, upon information and belief, Accenture has a pattern or practice of giving preferential treatment to young, non-white individuals (mostly Asian and South-Asians) in its employment practices like hiring and promotion opportunities.

68. As stated above, Plaintiff suffered an adverse employment action when she was terminated from Defendants.

69. Defendants failed to hire Plaintiff when she was blocked from moving to another project within the company. Pleading in the alternative, Defendants failed to promote Plaintiff by blocking her from joining another project within the company.

70. Plaintiff was replaced by a non-white person (*i.e.* someone outside of her protected class).

71. Pleading in the alternative from above, but for her race, Plaintiff would not have been terminated from Defendants. In other words, if Plaintiff were Asian or South Asian, she would not have been fired.

72. Pleading in the alternative from above, but for her race, Defendants would not have disallowed Plaintiff from joining another project within the company and/or failed to promote her. Accordingly, the Defendants violated the Title VII and §1981.

73. At the very least, race was a motivating factor in the decision to terminate Plaintiff and/or block her from joining another project within the company, which would have resulted in a promotion. Thus, the Defendant violated Title VII and TCHRA for discriminating against Plaintiff because of her race.

74. At the very least, race was a motivating factor in the decision to block Plaintiff from joining another project within the company, which would have resulted in a promotion.

75. Pleading in the alternative, Plaintiff is a victim of sex-plus-race discrimination because of Srivastava's and/or Delawalla's animus towards Plaintiff as a "white woman in charge," who does not succumb to gender norms of being submissive to men in her "management and communication style".

76. Such conduct violates Title VII and 42 U.S.C. § 1981.

77. Plaintiff has been damaged by the discrimination against her.

78. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights. An award of exemplary damages is therefore warranted.

### FIFTH CAUSE OF ACTION (RETALIATION)
*ADEA & TITLE VII*

79. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

80. Plaintiff engaged in a protected activity under the ADEA and Title VII when she complained to Human Resources on October 15, 2020 of what she reasonably believed to be unlawful discrimination.

81. Defendant took a materially adverse employment action against Plaintiff, post-employment, by wrongfully disputing her claim for unemployment benefits after she was offered severance pay pursuant to her eligibility in an ERISA-protected plan by not being terminated for "Cause".

82. Had Plaintiff not complained of discrimination and instead just quietly accepted the miniscule benefits under the ERISA plan and waived her right to bring suit, Defendants would not have fought her on the claim for unemployment benefits.

83. The action of a company arbitrarily fighting unemployment benefits would dissuade a reasonable employee from opposing unlawful employment practices.

84. Such conduct violates Title VII and the ADEA.

85. Plaintiff has been damaged by the discrimination against her.

86. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights. An award of exemplary damages is therefore warranted.

### ATTORNEYS' FEES

87. If Plaintiff prevails, she is entitled to an award of reasonable and necessary attorneys' fees.

### ADEA LIQUIDATED DAMAGES

88. Plaintiff seeks liquidated damages under the ADEA.

### EXEMPLARY DAMAGES

89. Plaintiff seeks exemplary damages under the TCHRA and 42 U.S.C. § 1981.

### JURY DEMAND

90. Plaintiff hereby demands a trial by jury on all claims that may be tried to a jury.

### PRAYER FOR RELIEF

Plaintiff hereby prays that Defendants be cited to appear and that, upon trial, the Court enter a judgment in his favor for the following:

a) Back pay;
b) Compensatory damages;
c) Emotional distress and mental anguish damages;
d) Liquidated damages;
e) Punitive damages;
f) Reinstatement and/or front pay;
g) Taxable court costs;
h) Exemplary damages;
i) Attorney's fees; and
j) Such other and further relief to which she may show herself entitled.

Respectfully submitted,

THROCKMORTON LAW FIRM PLLC

By: /s/Connor Throckmorton
Connor Throckmorton
S.D. Tex. #3065092
TX Bar #24103965
5850 San Felipe Street, Suite 500
Houston, Texas 77057
Telephone:    (713) 400-6173
Facsimile:    (713) 583-8380
Email:        connor@throckmortonlaw.com

***ATTORNEY FOR PLAINTIFF***